Susan I. Eastman
Arizona Bar No.021859
Navajo-Hopi Legal Services Program
Post Office Box 2990
Tuba City, Arizona 86045
(928) 283-3300
E-mail: seastman@nndoj.org

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Sylvia Tohannie, | No. CV-21-08272-PCT-MTL |
| Plaintiff, | |
| | **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | **(Oral Argument Requested)** |
| Office of Navajo and Hopi Indian Relocation, *an Administrative Agency of the United States,* | |
| Defendant. | |

Plaintiff, pursuant to Rule 56 Fed., R. Civ. P. and U.S.C. §706, moves the Court for entry of Summary Judgment based on the whole record in this matter.

**I.  PRELIMINARY STATEMENT**

Plaintiff (hereinunder "Plaintiff", "Sylvia" or "Ms. Tohannie") brings this administrative appeal to have her application for relocation assistance benefits be granted and the Office of Navajo and Hopi Indian Relocation ("ONHIR") decision, which denied her application, overturned.  At the administrative level, Plaintiff established and ONHIR

1

stipulated that she was a legal resident of the Hopi Partitioned Land ("HPL") on December 22, 1974. The parties further stipulated at Ms. Tohannie's hearing on December 18, 2015 that Ms. Tohannie's and her family members were legal residents of the HPL until sometime in 1981, and that the only issue to resolve for Ms. Tohannie's appeal was whether she was a self-supporting head of household at the time her family ceased its use of the HPL in 1981. **CAR 167, 168, 218.**[1] Ms. Tohannie met her burden of proof by demonstrating she was a self-supporting head of household by virtue of the Social Security survivor's benefits she began receiving directly in her own name in January 1979 and through September 1981. In addition, the HO ignores that Ms. Tohannie in 1981 was employed by the Job Corp and earned additional income. 25 CFR §700.69. Despite the uncontradicted evidence that from 1979 through the spring of 1981 Ms. Tohannie was self-supporting through SSA survivor benefits and work at the Job Corp, the HO arbitrarily disallowed her income from SSA, ignored her income from the Job Corp. and did not recognize the evidence that she was in fact supporting herself and her younger brother.

ONHIR's policy on head-of-household was promulgated by its legal counsel E. Susan Crystal sometime during the 1980's. This policy establishes ONHIR's criteria for a single person to establish self-supporting status, which this Court has also relied on in prior relocation benefits appeals cases. *George v. ONHIR,* 825 Fed.Appx. 419 (9th Cir. 2020) ("the $1,300 income threshold is not absolute" and an applicant can prove self-

---

1 Ms. Tohannie will cite directly to the administrative record throughout this brief as CAR___.

2

support with less income.); *Tsosie v. ONHIR,* 771 Fed.Appx. 426 (2019) (Plaintiff met her burden of head-of-household "because she earned $1,300 per year"). **See Exhibit "A", E. Susan Crystal Memorandum, "Criteria for Determination of Self-Supporting".** However, the Susan Crystal Memorandum does not specifically address an applicant's receipt of Social Security benefits.

The Hearing Officer has issued two prior decisions for applicants who received Social Security Benefits: Amos Dailey, Hearing No. 87-48, May 6, 1987, **CAR 228-230 and Exhibit "B" 2;** and Alexis Brown, Hearing No. 88-35, January 26, 1995, *see* **Exhibit "C"**. In both these administrative hearings the HO included the Social Security Survivor Benefits in his determination of income to establish the applicant's head- of-household**.**

The HO's decision in this matter ignored substantial evidence and ignored his own prior decisions. The HO's erroneous findings were that Ms. Tohannie was not a self-supporting head-of household when she received Social Security survivor benefits from January 1979 through 1981 and was a legal resident of her family's HPL homesite. ONHIR is not authorized to file a post hearing brief pursuant to its regulations. 25 CFR §700.315. However, the HO adopted ONHIR's newly created "policy" on its treatment of Social Security benefits as income through ONHIR's unauthorized post-hearing memorandum. **CAR 217, 236.** This aspect of the decision is not based on legitimate

---

2 Page 3 of the HO's decision containing his Conclusions of Law for Mr. Amos Dailey is missing from ONHIR's Certified Administrative Record, so we are attaching the whole Amos Dailey decision including page 3 as Exhibit "B" to Plaintiff's Motion for Summary Judgment.

3

ONHIR policy and is arbitrary and capricious. Accordingly, pursuant to the Administrative Procedure Act ("APA"), Plaintiff requests this Court reverse ONHIR's decision denying benefits to her.  *See* 25 U.S.C. §706.

**II. BACKGROUND**

The Navajo-Hopi Settlement Act, Pub. L. 93-531, §12, December 22, 1974, 88 Stat. 1716 (hereinafter the "Act") provided for the partition of the former Joint Use Area ("JUA") between the Navajo and Hopi Tribes when the two tribes were unable to resolve their longstanding land dispute.3  The Act required members of the two tribes who found themselves on land partitioned to the other tribe to relocate off those lands.  *Ibid.*  To compensate those tribal members who were required to relocate, the federal government created the Office of Navajo and Hopi Indian Relocation to both carry out the relocation of these tribal members and provide relocation assistance benefits to those tribal members subject to relocation.  *Ibid.*  Plaintiff Sylvia Tohannie is an enrolled member of the Navajo Nation who resided in the former JUA and was a legal resident on a homesite on land that was partitioned to the Hopi Tribe pursuant to the Act.  Plaintiff has filed this action to redress the denial of her application for relocation assistance benefits by Defendant, the Office of Navajo and Hopi Indian Relocation ("ONHIR").

**III.   THE LEGAL FRAMEWORK FOR ELIGIBILITY PURSUANT TO THE SETTLEMENT ACT AND IMPLEMENTING REGULATIONS**

To receive relocation assistance benefits, a Navajo applicant has the burden to

---

3 Formerly codified as 25 U.S.C. §§ 640d et seq. As of September 1, 2016, §640d of Title 25 was omitted from the United States Code by its compilers as being of "special and not general application." This omission has no effect on the validity of the law.

4

prove that he/she was a legal resident of land partitioned to the Hopi Tribe as of December 22, 1974 and that he/she was a head of household at time of move-off from the HPL. 25 CFR §700.147 (a), (b), and (e).

A. LEGAL RESIDENCE

ONHIR's predecessor agency the Navajo-Hopi Indian Relocation Commission ("NHIRC") published its final rule on eligibility for relocation assistance benefits on May 29, 1984. The agency's comment on that final rule provided as follows with regard to residence:

> **Section 700.97—Residence.**
>
> The term "residence" in the final rule is meant to be given its legal meaning which requires an examination of a person's intent to reside combined with manifestations of that intent. An individual who was, on December 22, 1974, away from the land partitioned to the Tribe of which he/she is not a member may still be able to prove legal residence.
>
> The proposed regulations provided that current occupancy was a criteria of residency. Comment received from the Navajo-Hopi Legal Services Program pointed out the inconsistency between this provision and the determination of legal residence as of December 22, 1974. Once legal residence is proven, current occupancy (which is a fluctuating condition) is not required for eligibility. The criteria of current occupancy has been eliminated from the final rule.

49 Fed. Reg. 22277-01, 1984 WL 188188 (May 29, 1984).

ONHIR and this Court have recognized that legal residency is essentially synonymous with domicile. *Gamble v. ONHIR*, No. CIV-97-1247-PCT-PGR at 14 (D. Ariz. Sept. 24, 1998) ("The CFR. defines 'residence' in this situation as equivalent to a legal residence or domicile."). "Residence is "meant to be given its legal meaning . . . which requires an examination of a person's intent to reside combined with

5

manifestations of that intent." See 49 Fed. Reg. 22277 (May 29, 1984). In *Mike v. ONHIR,* 2008 WL 54920, this Court recognized that the ONHIR had "rejected actual occupancy and instead chose 'legal residency' as the operative definition." At Ms. Tohannie's hearing on December 18, 2015, her counsel and ONHIR's counsel stipulated on the record that Ms. Tohannie and her family's legal residence on the HPL continued until sometime in 1981 when the fence that separated the family's area located on the former Bennett Freeze Area from their HPL camps was permanently closed. **CAR 167, 168.**

## B. HEAD of HOUSEHOLD

In the mid-1980's, legal counsel for ONHIR (formerly "NHIRC"), E. Susan Crystal, Esq. set forth agency policy in an undated memorandum to ONHIR's Executive Director which interpretated how to apply "self-supporting" and "head of household". *See* **Exhibit "A".** In her memorandum, Ms. Crystal explains that a single individual attains head of household through receipt of "general assistance" would be determined self-supporting:

> The following criteria are, in my opinion, to be used in considering self-supporting status.
>
> (1). The level of general assistance available to single individuals on the Reservation. It is my understanding that this amount is approximately $1300.00 per year. In most cases, this is supplemented by food stamps and the receipt of Federal commodities. For a family, the general assistance level is approximately $2500.00. Families or individuals who can demonstrate receipt of general assistance would be determined self-supporting.

*Id.* at 2.

C.  SOCIAL SECURITY SURVIVOR BENEFITS

Social Security survivor benefits are income that are attributed to the recipient upon deposit in their account for their use. 20 C.F.R. § 416.1123 (a).  In *Martin v. Sullivan*, 932 F.2d 127 (9th Cir. 1990), the Court upheld SSA's withholding of the Plaintiff's Railroad survivor benefits to pay back an over payment based on the purpose of the funding which was to give income to the beneficiary. The Court found the payments "upon receipt, become the property of the child". *Carstens v. U.S. Shoe Corporation Long-Term Benefits Disability Plan,* 520 F. Supp. 2d 1165,1168 (N.D. CA 2007). ONHIR recognizes income from various entitlements and benefits programs and fails to give a rational explanation why Ms. Tohonnie's SSA income is not considered contributing income to her burden of proving self-support. *See* **Exhibit "A".**

ONHIR has not published or promulgated a separate policy or regulation on how the agency will treat an applicant's receipt of Social Security benefits.  The HO's prior decisions give credit for social security survivor benefits received by the applicant in order for the applicant to attain head-of-household status.  *See* **Exhibits "B" and "C"; CAR 233-240.**

**IV.  STANDARD OF REVIEW FOR AGENCY ACTION THAT IS ARBITRARY AND CAPRICIOUS AND NOT SUPPORTED BY SUBTANTIAL EVIDENCE**

A reversal of an agency decision is warranted if the agency action was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Shaw v. ONHIR*, 860 Fed.Appx. 493, 494 (2021).  When reviewing an agency's decision under an arbitrary and capricious standard, the district

court must determine whether the agency's decision was based on consideration of relevant factors and whether there has been a clear error of judgment. *Northwest Motorcycle Association v. U.S. Department of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). An agency's action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). The inquiry by the reviewing court must be searching and careful. *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989); *California Energy Com'n v. Dept. of Energy*, 585 F.3d 1143, 1150-1151(9th Cir. 2009).

An agency decision is arbitrary and capricious if it does not follow its own precedent and does not provide a reasoned explanation for not following precedent. *Andzejewski v. F.A.A.,* 563 F.3d 796, 799 (9th Cir. 2009). Thus, "[a]n agency's failure to come to grips with conflicting precedent constitutes 'an inexcusable departure from the essential requirement of reasoned decision making.'" *Jicarilla Apache Nation v. U.S. Dept. of Interior*, 613 F.3d 1112, 1120 (D.C. Cir. 2010) (quoting from *Ramaprakash v. FAA*, 346 F.3d 1121, 1125 (D.C.Cir.2003)). An agency acts arbitrarily "when it disregards its own precedents and policies without giving a reasonable explanation." *Israel v. INS*, 785 F.2d 738, 740 (9th Cir. 1986). When an Agency departs from its prior policies it must "clearly set forth so that the reviewing court may understand the basis of

the agency's action and so may judge the consistency of that action with the agency mandate." *Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 807-08 (1973). There is a presumption that adjudicated policies will be adhered to in the future. "From this presumption flows the agency's duty to explain its departure from prior norms." *Secretary of Agriculture of U.S. v. U.S.,* 347 U.S. 645, 654 (1954).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Information Providers' Coalition for Defense of the First Amendment v. FCC*, 928 F.2d 866, 870 (9th Cir. 1991). A reviewing court may set aside an agency's decision "when it cannot conscientiously find that that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the [agency's] view." *Universal Camera v. National Labor Relations Board*, 71 S.Ct. 456, 488 (1951).

"We are required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion." *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). A District Court reviewing an agency decision "may not affirm simply by isolating a specific quantum of supporting evidence." *Hammond v. Bowen*, 878 F.2d 498, 501 (9th Cir. 1989).

**V. THE HO'S DECISION IS ARBITRARY AND CAPRICIOUS AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE.**

    **A. ONHIR and the HO's inconsistent decisions on the treatment of Social Security benefits as income for self-supporting status are arbitrary and capricious.**

A federal agency's actions must be consistent, and an internally inconsistent analysis by a federal agency is arbitrary and capricious.  *See National Parks Conservation Ass'n v. E.P.A.*, 788 F.3d 1134, 1141 (9th Cir. 2015).    An agency action is also considered arbitrary and capricious when the agency "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of U.S*, 463 U.S. at 43. Here, when counsel for ONHIR's predecessor agency, the NHIRC, issued her memorandum on the "criteria for self-supporting" for single individuals, the agency considered General Assistance as the threshold by which a single applicant is considered a self-supporting head of household for benefits eligibility.  **See Exhibit "A".**  Defendant has never promulgated a separate regulation or policy addressing how single applicants' receipt of Social Security benefits will be treated to satisfy the head of household requirements for eligibility.  Prior to Plaintiff's case, ONHIR had issued two opinions through its HO on head-of-household and SSA survivor benefits.  In the Amos Dailey appeal, the HO found that Mr. Dailey "began receiving social security benefits in the sum of $275.00 per month in April, 1980 when he was eighteen years old and was a student in Tuba City High School.  Prior to the direct receipt of such benefits, the applicant's mother had been receiving the applicant's social security benefits."  **CAR 229.**  The HO further noted that Mr. Dailey graduated from high school in May 1981 and expended the funds he received for food, gasoline and kerosene. *Id.*  In his Conclusions of Law for Mr. Dailey, the HO held that "at the time applicant's mother relocated to Winslow in the early part of 1981, applicant was self-supporting as he was the direct recipient of social security benefits in the amount of $275.00 per month, which funds were applied for his

support at a trailer in Sand Springs", and that Mr. Dailey was "a head of household at the time his mother relocated to Winslow as he was at that time self-supporting." *See* **Exhibit "B", HO Decision for Amos Dailey at 3.** The HO held that Mr. Dailey was eligible for relocation benefits from the agency. *Id.* at 3-4.

In explaining his decision, the HO held that because Mr. Dailey received social security survivor benefits, he "must be considered to have been a head of household at that time, despite his continued education in Tuba City High School." *Id.* The HO further held that Mr. Dailey "showed the financial wherewithal to support himself as he was receiving social security benefits directly instead of through a payee and he used such benefits to support himself at Sand Springs." **CAR 230; Exhibit "B" at 4.**

In the appeal of Alexis Brown in January 1995, the HO found that when Mr. Brown's father passed away in 1979 when he was 13 years old, his mother began receiving social security benefits on his behalf. *See* **Exhibit "C", HO Decision for Alexis Brown at 2.** In his Conclusions of Law, the HO held that "[b]y August 1983, applicant had become a head of household as he was earning monies from his work, he was a beneficiary of social security benefits and the totality of circumstances demonstrates his independence and self-support prior to his mother's relocation." In his explaining his decision to grant Mr. Brown's appeal, the HO noted Mr. Brown's earnings from work while a high school student and his receipt of social security benefits "in the approximate amount of $125.00 per month." The HO further noted that "[w]hile social security benefits, in and of themselves, cannot sustain a claim for independence by applicant, the combination of social security and earnings justifies the conclusion that

11

applicant attained head of household status prior to August 1983." The HO does not mention whether Mr. Brown ever received the social security benefits directly or whether he continued to receive social security benefits through his mother as the payee. *Id.* 1-5.

ONHIR certified these applicants as eligible for relocation benefits after the HO issued his decisions in their favor.4  Ms. Tohannie's appeal of ONHIR's denial of her application for relocation benefits was heard in February 2016.  This is the first time ONHIR took a position contrary to its earlier certifications of Mr. Dailey and Mr. Brown based on their receipt of Social Security benefits.  We learn only through ONHIR's counsel's statement of ONHIR's "position" in its post-hearing memorandum that ONHIR does not accept receipt of survivor benefits "as enabling or helping enable a child to attain self-supporting status." **CAR 217.**  The HO ignores his prior decisions for Mr. Dailey and Mr. Brown and instead wholly and incorrectly adopts ONHIR's position in his legal conclusions for Ms. Tohannie that "receipt of such benefits is not self-support; it is a continuation of dependency, regardless of whether applicant was the payee when she was 17 years old." **CAR 239**.  ONHIR for 30 years has treated the applicant's receipt of Social Security benefits as income to meet the head of household eligibility. However, in this appeal, it changed its position without explanation or regulatory process and left it to its HO to issue an inconsistent decision on the issue. ONHIR's failure to properly address this "important aspect of the problem" resulted in an arbitrary and capricious agency action. *Motor Vehicle Mfrs. Ass'n of U.S*, 463 U.S. at 43. *Andzejewski Id.* 799.

---

4 Amos Dailey, CIB #302,181, ONHIR CF #2428, certified eligible by ONHIR on 7/10/1987; Alexis C. Brown, CIB #613,589, ONHIR CF#3477, certified eligible by ONHIR on 2/13/1995.  *See* ONHIR Alpha Case Master List for Relocated Members Only dated 7/21/2015.

For Ms. Tohannie, ONHIR asserts in its post-hearing memorandum, for the first time, the agency's "position":

> "Survivor benefits' are designed to partially replace the support that a parent provides to his/her children in the event of the parent's death. Since parental support does not establish a child as self-supporting – in fact such support refutes a claim of a child being self-supporting – so too receipt of survivor benefits should not be considered as enabling or helping enable a child to attain self-supporting status." **CAR 217.**

The HO entirely adopts ONHIR's position in his Conclusions of Law when he incorrectly holds that Ms. Tohannie "cannot be considered to be a self-supporting head of household at any time prior to her change of legal residence in the spring of 1981 by virtue of becoming the payee for her deceased father's social security survivor's benefits as the benefits were intended to be and were calculated as replacement for the financial support her father would have otherwise provided to her as a dependent child." **CAR 236.** The HO further echoed ONHIR's position when he explained his decision by his incorrect assertion:

> Applicant remained a dependent in the spring of 1981. Her receipt of social security survivor benefits was a replacement for the material, basic support for her personal needs that her father would have otherwise provided to her before her 18th birthday (she began receiving survivor benefits in 1965). Receipt of such benefits is not self-support; it is a continuation of dependency, regardless of whether applicant was the payee when she was 17 years old.

**CAR 239.**

The U.S. Supreme Court has recognized "the inherently arbitrary nature of unpublished ad hoc determinations" and has stated the requirement of the Administrative Procedure Act for a federal agency to publish "statements of general policy or interpretations of general applicability formulated and adopted by the agency." *See* 5

13

U.S.C. §552(a)(1) quoted in *Morton v. Ruiz,* 415 U.S. 199, 232-233 (1974).  ONHIR's assertion in its post-hearing memorandum that "receipt of survivor benefits should not be considered as enabling or helping enable a child to attain self-supporting status" as agency "policy" is "an unpublished ad hoc determination of the agency that was not promulgated in accordance with its own procedures, to say nothing of those of the Administrative Procedure Act".  *Morton*, 415 U.S. at 236.

As such, ONHIR's "policy", as stated in its post-hearing memorandum, to not credit Social Security survivor benefits towards meeting the applicant's self-supporting requirement, is not entitled to any deference by this Court.  Deference by this Court to ONHIR's stated new "position" that is inconsistent with prior decisions is "entirely inappropriate".  *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 213 (1988) (deference will not be given to an agency's litigation position that is inconsistent with its prior decisions. *Id*.). ONHIR expressed this "policy" for the first time in its post-hearing memorandum, which ONHIR counsel submitted in opposition to Plaintiff's administrative appeal.  ONHIR's stated position in its post-hearing memorandum as "policy" is "nothing more than an agency's convenient litigating position".  *Id.* The lack of a policy by ONHIR and the HO's inconsistent decisions on the treatment of Social Security benefits as income are arbitrary and capricious, as the inconsistent positions by ONHIR and the HO makes it nearly impossible to advise an applicant on whether their receipt of Social Security benefits will count towards meeting the self-supporting head of household requirement for relocation benefits eligibility.  ONHIR's statement of its position on the treatment of Social Security survivor benefits in its post-

hearing memorandum cannot and should not be treated as ONHIR "policy" on Social Security benefits.

### B. The HO's findings that Ms. Tohannie was not a self-supporting head of household and legal resident on the HPL in 1981 is unsupported by substantial evidence.

Contrary to the HO's assertion that Ms. Tohannie's claim of self-support based on her direct receipt of survivor benefits as a payee is "not supported by the evidence in this appeal", there is substantial evidence in the record to support her claim of being a self-supporting head of household. **CAR 134, 154, 237.** Despite submitting documentary evidence from the Social Security Administration showing she became the direct payee of her father's survivor benefits in January 1979 when she was 16 and still a high school student, the HO gives Ms. Tohannie no credit towards meeting the self-supporting requirement for relocation benefits eligibility. **CAR 154, 237, 239, 240.** The "Report of Confidential Social Security Benefit Information" is in the record of this appeal. It demonstrates that Ms. Tohannie, from January, 1979 through September, 1981, directly received a total of $4,105.00 in Social Security survivor's benefits. **CAR 154, 174-175.** Of that amount, $1,531.00 was received during calendar year 1980. *Id.* Ms. Tohannie became 18 years old on October 11, 1980 and graduated from high school in May 1981. **CAR 172.** From January, 1981 through June, 1981, she received $935.00. **CAR 154.** Sylvia used her survivor's benefits to purchase food and necessities for herself and her younger brother Michael, and she also saved funds for college. **CAR 175-176.** Based on the $1,300.00 threshold amount set forth in the Susan Crystal Memorandum as the amount an individual must receive to be considered self-supporting, Ms. Tohannie

15

became a head-of-household in 1980 when she received a total of $1,531.00 in survivor's benefits as a direct payee when she was still a legal resident of her family's HPL homesite. *See* **Exhibit "A"; CAR 154, 175-176.**

The HO also totally ignores the fact that in addition to the social security benefits Ms. Tohannie worked for the Job Corp in 1981 and earned $1,332.00. **CAR 134, 155, 162**. This income must be included in the analysis and with the SSA benefits Ms. Tohannie exceeded the presumptive $1,300.00 per annum income in 1981. *George v. ONHIR,* 825 Fed Appx. 419 (9th Cir. 2020) (Agency action is arbitrary and capricious if it fails to consider important factors of the "problem")

Beyond the income analysis the HO does not analyze Ms. Tohannie's specific family relations that mandated that she become self-supporting. The testimony is undisputed that Ms. Tohannie's mother had an alcohol addiction. **CAR 179, 204**. She would receive the Social Security check to support her children and "disappear" with the funds. **CAR 172, 176, 194**. Ms. Tohannie's older brother testified that the kids were "on their own" and took care of themselves when their mother was not home. **CAR 194.** This is testified to by Ms. Tohannie herself who stated that when she received the SSA fund directly starting in January 1979, the funds were used to support herself and she would also support her younger brother. **CAR 175, 176**. This demonstrates not only was Ms. Tohannie earning the requisite amount of funds from 1979 on but she also was in fact supporting herself as an independent adult since 1979. *Id.*

The HO did not base his decision on substantial evidence and failed to reconcile and explain facts that were in direct cointervention to his findings.

### VI. CONCLUSION

For the reasons set forth in this motion and based on the whole record this Court should reverse ONHIR's decision and find Ms. Sylvia Tohannie eligible for relocation assistance benefits.

Respectfully submitted this 22nd day of June, 2022.

/s/ *Susan I. Eastman*
Susan I. Eastman
Attorney for Plaintiff
117 Main Street
P.O. Box 2990
Tuba City, AZ 86045

### CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2022, I electronically transmitted the attached document, Plaintiff's Motion for Summary Judgment, to the Clerk's Office using the CM/ECF System for filing, and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Peter M. Lantka
Assistant United States Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, AZ 85004-4408
plantka@usa.doj.gov

/s/ *Susan I. Eastman*
Susan I. Eastman