**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sylvia Tohannie,<br><br>             Plaintiff,<br><br>v.<br><br>Office of Navajo and Hopi Indian Relocation,<br><br>             Defendant. | No. CV-21-08272-PCT-ROS<br><br>**ORDER** |

Plaintiff Sylvia Tohannie, a member of the Navajo Nation, sought relocation benefits under the Navajo-Hopi Settlement Act. Tohannie claimed she moved off Hopi-Partitioned Land ("HPL") in 1981 after she began supporting herself. The Office of Navajo and Hopi Indian Relocation ("ONHIR") conceded Tohannie moved off HPL in 1981 but concluded Tohannie had not presented sufficient evidence she was supporting herself before she moved. Therefore, Tohannie's application for benefits was denied. ONHIR's stated basis for rejecting Tohannie's evidence of self-support contradicted ONHIR's approach in at least two previous cases and ONHIR did not explain its new approach. Therefore, this case must be remanded for additional proceedings.

**BACKGROUND**

The parties' briefs contain extensive details about factual matters where they disagree. For present purposes, however, the Court need only recite some agreed-upon background facts including a stipulation between the parties regarding when Tohannie left the HPL.

Tohannie was born on October 11, 1962. After Tohannie's father died in 1965, Tohannie's mother began receiving Social Security survivor benefits for herself and her children, including Tohannie. Throughout her childhood, Tohannie lived with her mother and siblings on the HPL. The parties agree that, at times, Tohannie's mother was absent, leaving Tohannie and her siblings to take care of themselves or rely on nearby relatives. During the administrative proceedings the parties presented conflicting evidence regarding the extent of those absences, but it was undisputed some absences occurred.

In January 1979, Tohannie began receiving the survivor benefits as a "direct payee." At that time, Tohannie was sixteen years old, still in school, and living with her mother. The monthly amounts Tohannie received started small at $69.00 per month but increased over time. As of May 1981, Tohannie was receiving $153.00 each month. Altogether, Tohannie received survivor benefits totaling $1,129[1] in 1979 and $1,531[2] in 1980. From January through June 1981, Tohannie received survivor benefits totaling $935.[3] (Doc. 11 at 155). During the administrative proceedings the parties stipulated Tohannie and her family moved off the HPL "at some point in 1981." (Doc. 11 at 167-68).

Decades later, Tohannie applied for relocation benefits under the Navajo-Hopi Settlement Act. After her initial application was denied, Tohannie appealed and an Independent Hearing Officer ("IHO") heard testimony from Tohannie and others. The IHO's written decision determined Tohannie and her family moved off the HPL in the spring of 1981. The IHO concluded that, "[a]t that time, [Tohannie] was 18 years old and a dependent, whose basic personal needs for shelter were provided by others." (Doc. 11 at 236). The IHO did not identify the "others" who provided those personal needs but presumably the IHO primarily meant Tohannie's mother. (Doc. 11 at 236). The IHO's most important finding for purposes of the present proceedings involved his view that

---

[1] This represents five payments of $69 ($345) and seven payments of $112 ($784). (Doc. 11 at 155).
[2] This represents five payments of $112 ($560), four payments of $128 ($512), and three payments of $153 ($459).
[3] This represents five payments of $153 ($765) and one payment of $170.

1  Tohannie's receipt of survivor benefits established she was dependent on others. The
2  IHO stated:

> [Tohannie] cannot be considered to be a self-supporting head of household at any time prior to her change of legal residence in the spring of 1981 by virtue of becoming the payee for her deceased father's social security survivor's benefits as the benefits were intended to be and were calculated as replacement for the financial support her father would have otherwise provided to her as a dependent child.

(Doc. 11 at 236). The IHO elaborated on this point later in his decision where he stated Tohannie's survivor benefits merely replaced the support "her father would have otherwise provided" and "[r]eceipt of such benefits is not self support; it is a continuation of dependency, regardless of whether [Tohannie] was the payee when she was 17 years old." (Doc. 11 at 239). The Executive Director of the ONHIR determined the IHO's denial was correct, and that denial was the final agency action. (Doc. 11 at 243).

## ANALYSIS

Tohannie seeks review of the ONHIR's decision under the Administrative Procedure Act ("APA"). *See Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995) (noting agency action is reviewed under APA standard "[u]nless Congress specifies otherwise"). The APA provides "agency action shall withstand judicial review unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* Of particular importance here, agency action will qualify as "arbitrary and capricious if the agency fails to follow its own precedent or fails to give a sufficient explanation for failing to do so." *Andrzejewski v. F.A.A.*, 563 F.3d 796, 799 (9th Cir. 2009).

To be eligible for relocation benefits under the Navajo-Hopi Settlement Act, Tohannie had to meet two basic requirements. First, she "must have been [a] resident[] on December 22, 1974, of [the HPL]." 25 C.F.R. § 700-147(a). Second, she must have been a "head of household"—alternatively identified as "self-supporting"—at the time she moved off the HPL. *Id.* There has never been any dispute Tohannie was a resident of the HPL as of December 22, 1974. And as noted earlier, the parties stipulated in the

administrative proceedings that Tohannie moved off the HPL "at some point in 1981." (Doc. 11 at 167). The IHO determined the relevant date in 1981 was "spring" and Tohannie does not dispute that finding here. Accordingly, during the administrative proceedings Tohannie recognized the crucial dispute did not involve precisely when she moved off the HPL but whether she "became head of household prior to her leaving the [HPL]."[4] (Doc. 11 at 221) (Tohannie's post-hearing brief). The IHO found she was not a head of household as of the spring of 1981. Tohannie believes that finding was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Hopi Tribe*, 46 F.3d at 914.

Pursuant to regulation, a "single person" such as Tohannie qualified as a "head of household" if, at the time she moved off the HPL, she "actually maintained and supported . . . herself." 25 C.F.R. § 700.69(a)(2). The regulations do not provide additional guidance on what type of evidence must be submitted to establish this self-support. However, the ONHIR has a long-standing policy of relying on a memo prepared by its "former legal counsel" that sets out "Criteria for Determination of Self-Supporting." *Benally v. Off. of Navajo & Hopi Relocation*, 2014 WL 523016, at *2 (D. Ariz. Feb. 10, 2014). According to that memo, ONHIR "has always considered the variety of circumstances in which individuals live on the HPL" when assessing if an individual was self-supporting at the relevant time. (Doc. 12-1 at 3). In addition, the memo states "[t]here is obviously considerable difficulty in determining a fixed definition for self-supporting because of the nature of the lifestyle on the HPL." (Doc. 12-1 at 4). The memo outlines general guidance for determining "head of household" status that the ONHIR has followed for decades.

The memo states individuals who received "general assistance" of at least $1,300 per year "would be determined self-supporting."[5] In addition, individuals who could

---

[4] ONHIR's post-hearing brief described the sole issue as whether Tohannie was a resident of the HPL "when she became a Head of Household by virtue of the birth of her first child on August 23, 1983." (Doc. 11 at 213). Having reviewed the entire administrative record, there is no explanation why ONHIR concluded that was the relevant issue as there was no evidence Tohannie was still on the HPL in 1983.
[5] While not explained in the memo, the referenced "general assistance" presumably was

- 4 -

"produce wage statements, W-2 forms, or tax returns showing a consistent level of income in excess of [$1,300] would be considered self-supporting." Finally, the memo recognizes individuals under the age of eighteen or who were still high school students at the time they left the HPL could qualify as self-supporting, but they would be "scrutinized more closely and [would] require substantiation of income and independence to rebut the normal presumption of dependence." (Doc. 12-1 at 3-4).

Over the years, ONHIR and the federal courts viewed the memo as establishing something close to a bright line rule.[6] That is, incomes more than $1,300 have been viewed as establishing the individual was self-supporting. ONHIR has sometimes described the $1,300 figure merely as a "*prima facie* showing of self-supporting status."[7]

---

money provided directly to eligible individuals by the Bureau of Indian Affairs. *See Morton v. Ruiz*, 415 U.S. 199, 208 (1974) ("The general assistance program is designed by the BIA to provide direct financial aid to needy Indians where other channels of relief, federal, state, and tribal, are not available.").

[6] *See Tsosie v. Off. of Navajo & Hopi Indian Relocation*, 771 F. App'x 426, 427 (9th Cir. 2019) ("Tsosie met her burden to demonstrate head-of-household status because she earned $1,300 per year or more by 1979."); *George v. Off. of Navajo & Hopi Indian Relocation*, 825 F. App'x 419, 421 (9th Cir. 2020) ("In its briefing and at oral argument, ONHIR agreed that the $1,300 income threshold is not an absolute rule, and that an applicant who earns less than $1,300 in yearly earnings may qualify as self-supporting under the regulations if other evidence establishes that the applicant is self-supporting."); *Begay v. Off. of Navajo & Hopi Indian Relocation*, 2021 WL 2826125, at *5 (D. Ariz. July 7, 2021) ("An amount of $1,300 or more is a sufficient income to achieve self-supporting status."); *Begay v. Off. of Navajo & Hopi Indian Relocation*, 2018 WL 11265153, at *3 (D. Ariz. Mar. 30, 2018) ("An annual income of $1,300 or more is required as proof of an individual's ability to maintain and support themselves."); *Begay v. Off. of Navajo & Hopi Indian Relocation*, 2017 WL 4297348, at *2 (D. Ariz. Sept. 28, 2017) ("Plaintiff could qualify as a head of household only by demonstrating self-support, which requires that he earned at least $1,300 per year."); *Benally v. Off. of Navajo & Hopi Relocation*, 2014 WL 523016, at *2 (D. Ariz. Feb. 10, 2014) ("To be considered self-supporting, ONHIR regulations required Plaintiff to establish that he earned $1,300 per year in income."); *O'Daniel v. Off. of Navajo & Hopi Indian Relocation*, 2008 WL 4277899, at *5 (D. Ariz. Sept. 18, 2008) ("In order to be considered self-supporting, ONHIR policy requires that the applicant establish that he or she earned $1,300.00 per year in income.").

[7] *See also Webb v. Off. of Navajo & Hopi Indian Relocation*, 2022 WL 2817711, at *5 (D. Ariz. July 19, 2022) ("The ONHIR's regulations do not set forth a specific dollar amount an applicant must have earned in order to qualify as self-supporting, but earnings of at least $1,300 per year create a *prima facie* showing of self-support."); *Todicheeney v. Off. of Navajo & Hopi Indian Relocation*, 2022 WL 1555394, at *5 (D. Ariz. May 17, 2022) ("The ONHIR's regulations do not set forth a specific dollar amount an applicant must have earned in order to qualify as self-supporting, but earnings of at least $1,300 per year create a *prima facie* showing of self-support."); *Whitehair v. Off. of Navajo & Hopi Indian Relocation*, 2018 WL 6418665, at *4 (D. Ariz. Dec. 6, 2018) (noting ONHIR "concedes that it has often held that an applicant who earn[s] at least $1,300 per year can

(CV-21-8003, Doc. 16 at 12). But ONHIR has not explained how this "*prima facie* showing" operates in practice.[8] At the very least, an income of more than $1,300 has long been viewed as powerful evidence of self-support although ONHIR might, in the right situation, be able to produce evidence establishing otherwise.

It is undisputed Tohannie received $1,531 in survivor benefits in 1980 while she was still living on HPL. Thus, if survivor benefits are a cognizable form of "income," Tohannie should have been treated as if she made a "prima facie showing of self-supporting status." However, according to the IHO in Tohannie's case, those survivor benefits could not be viewed as "income" relevant to the $1,300 threshold. The IHO stated survivor benefits "were intended to be and were calculated as replacement for the financial support her father would have otherwise provided to her as a dependent child." The IHO also noted "[r]eceipt of such benefits is not self support" but actually "a continuation of dependency." In other words, the IHO concluded survivor benefits can never be used to establish an individual was self-supporting. That view of survivor benefits is contrary to ONHIR's past practice.

In previous decisions, ONHIR held survivor benefits could be considered when evaluating whether an individual was self-supporting. In a 1987 decision, an IHO addressed a claim for benefits by Amos Dailey, a member of the Navajo Nation who lived with his mother on the HPL in the 1970s. Before April 1980, Dailey's mother received social security benefits on Dailey's behalf. But in April 1980, Dailey turned eighteen and he "began receiving social security benefits in the sum of $275.00 per month." (Doc. 12-2 at 3). At that time, Dailey was attending high school and he lived in a dormitory at the school. "[I]n the beginning of 1981," Dailey's mother moved off the HPL. Dailey, however, returned to the HPL "on weekends" and he "expended his funds

---

make a prima facie showing of self-supporting status").
[8] In general, "[a] prima facie showing simply means evidence of such nature as is sufficient to establish a fact and which, if unrebutted, remains sufficient for that purpose." *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1176 (11th Cir. 2002). Thus, proof of income more than $1,300 would be sufficient to establish "head of household" status absent countervailing evidence.

for provisions for the trailer" where he stayed. (Doc. 12-2 at 3). Dailey graduated high school in May 1981, and he then lived on the HPL "for approximately nine months."

The IHO determined Dailey qualified as a "head of household" at the time necessary to be eligible for relocation benefits. The IHO stated Dailey "was self supporting as he was the direct recipient of social security benefits in the sum of $275.00 per month, which funds were applied for his support at a trailer" on the HPL. The IHO went on to explain Dailey had "show[n] the financial wherewithal to support himself as he was receiving social security benefits directly instead of through a payee and he used such benefits to support himself." (Doc. 12-2 at 5).

The second decision is from 1985 and it involved Alexis Brown, also a member of the Navajo Nation. In 1979, Brown's father died, and his mother began receiving social security benefits on Brown's behalf. In 1980, Brown and his mother moved off the HPL but they returned to the HPL "approximately every other week, normally on weekends." (Doc. 12-3 at 4). During the summer of 1983, Brown worked at an unidentified job and he gave "most" of his earnings from that job "to his mother for support of the family." In August 1983, Brown's mother received "relocation assistance and she relocated" off the HPL. (Doc. 12-3 at 4). The IHO determined that "[b]y August 1983, [Brown] had become a head of household as he was earning monies from his work, he was a beneficiary of social security benefits and the totality of circumstances demonstrates his independence and self support prior to his mother's relocation." (Doc. 12-3 at 5).

When explaining his conclusion that Brown was self-supporting, the IHO stated Brown's paid work and monetary contributions to his mother "partially met his burden of showing self support." In addition to his paid work, the IHO noted Brown "was the recipient of social security benefits in the approximate amount of $125.00 per month." The IHO then stated that when the social security benefits were "added to [Brown's] earnings," Brown met "the threshold requirements established by the Commission for determining self support." In other words, Brown's wages and survivor benefits totaled more than $1,300. The IHO explained "social security benefits, in and of themselves,

cannot sustain a claim for independence" but "the combination of social security and earnings justifies the conclusion that [Brown] attained head of household status prior to August 1983."

The decisions in the Dailey and Brown cases establish ONHIR previously viewed direct receipt of social security benefits as highly relevant to determining whether an individual was self-supporting. In fact, the decision in Dailey is directly contrary to the rationale employed in Tohannie's case. According to the IHO in Tohannie's case, survivor benefits must be viewed as supporting dependency because they are simply "replacement for the financial support her father would have otherwise provided." But in the Dailey case, the IHO concluded Dailey had shown "the financial wherewithal to support himself" by receiving and spending survivor benefits. The IHO handling Tohannie's case did not explain why survivor benefits had previously been indicative of self-support while the survivor benefits received by Tohannie were indicative of dependency.

ONHIR argues the Dailey and Brown decisions are "distinguishable" from Tohannie's case but ONHIR highlights only immaterial differences. (Doc. 16 at 14). For example, ONHIR argues Dailey used survivor benefits to "provision[] the trailer where he lived on the weekends, without his mother." (Doc. 16 at14). That is true but there was no dispute at the administrative hearing that Tohannie used at least some of her survivor benefits to support herself and a sibling. So while Tohannie did not live entirely on her own in a trailer, she did use survivor benefits to support herself to some degree. But even more importantly, ONHIR does not address why Tohannie's receipt of survivor benefits was viewed as evidence of dependency while Dailey's receipt of the same benefits was viewed as evidence of independence. If the rationale adopted in Tohannie's case had been applied in Dailey's case, there is no question Dailey would have been ineligible for benefits.

ONHIR also argues the Brown case is distinguishable because the IHO combined survivor benefits with earnings from a job to establish independence. Again, however,

ONHIR does not address the inherent contradiction between the reasoning in the Brown case and that used in denying Tohannie's application. If survivor benefits show dependence, it makes no sense to combine survivor benefits with earnings and conclude the total meets "the threshold requirements . . . for determining self support." Under the reasoning used by the IHO in rejecting Tohannie's application, Brown's survivor benefits should have been subtracted from his earnings or ignored, not added to Brown's earnings.

The conclusion that Tohannie's receipt of survivor benefits was evidence of dependence was contrary to ONHIR's past practice. Agencies are not required to follow previous precedent but, if they depart from such precedent, they must give "sufficient explanation[s]" for doing so. *Andrzejewski v. F.A.A.*, 563 F.3d 796, 799 (9th Cir. 2009). Here, ONHIR departed from precedent and made no effort to offer an explanation. Tohannie is entitled to remand for additional proceedings. On remand, it is entirely possible she will not be entitled to benefits. But, at the very least, she is entitled to an explanation for ONHIR's change regarding survivor benefits.

Accordingly,

**IT IS ORDERED** the Motion for Summary Judgment (Doc. 12) is **GRANTED**. This case is remanded for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** the Motion for Summary Judgment (Doc. 16) is **DENIED**.

**IT IS FURTHER ORDERED** the Clerk of Court shall enter judgment consistent with this Order and terminate this case.

Dated this 29th day of December, 2022.

Honorable Roslyn O. Silver
Senior United States District Judge